# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 c 6243 | **DATE** | 9/3/2004 |
| **CASE TITLE** | Curtis Jones vs. GES Exposition Services, Inc.,et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER: Plaintiff's motion to amend [93-1] is denied, the motion to intervene [47-1] is denied, the motions to proceed *in forma pauperis* [75-1 & 77-1] and for appointment of counsel [76-1 & 78-1] of Mr. Britten and Leonardo Johnson, Jr. are denied as moot. Anita Moore's motions to proceed *in forma pauperis* and for appointment of counsel [107-1 & 108-1] are denied, and Defendant Champion's motion to strike [105-1] is denied as moot. As previously stated (*see* footnote 2, *infra*), the parties are directed to please confer regarding what discovery, if any, remains to be completed in this case, and what further pre-trial proceedings and/or motion practice, if any, remain to be completed.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 0 7 2004 | 109 |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | GMA | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

U.S. DISTRICT COURT
CLERK
2004 SEP -3 PM 4:44

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

SEP 0 7 2004

| | | |
|---|---|---|
| CURTIS JONES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 02 C 6243 |
| | ) | |
| v. | ) | Judge Mark Filip |
| | ) | |
| GES EXPOSITION SERVICES, INC., | ) | |
| VIAD CORP., FREEMAN DECORATING | ) | |
| COMPANY, and CHAMPION EXPOSITION | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff Curtis Jones, an African American carpenter, alleges in his First

Amended Complaint, which was filed on April 21, 2003, that Defendants GES Exposition

Services, Inc. ("GES"), Viad Corp. ("Viad"), Freeman Decorating Company ("Freeman"), and

Champion Exposition Services, Inc. ("Champion") (collectively "Defendants"), have violated

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII")

and 42 U.S.C. § 1981 ("Section 1981"), by failing to hire and/or promote him and a similarly

situated class of African American carpenters and by retaliating against him for complaining of

discrimination. Plaintiff since moved (well after the deadline that Judge Lefkow set in 2003 for

adding parties (D.E. 42)) to amend his complaint to add fifteen claims against seven new

defendants. The proposed new defendants (collectively "proposed defendants") include

Carpenters Union Local #10 (the "Carpenters Union"), the Chicago and Northeast Illinois

Council of Carpenters (the "Council of Carpenters"), Carpenters Union executives Frank Libby

and Earl Oliver, the Metropolitan Exposition and Pier Authority (the "Pier Authority"), and attorney Terrance B. Mcgann and the law firm Whitfield & Mcgann, who have variously represented union entities. In addition, eight carpenters ("proposed intervenors") have moved to intervene as plaintiffs in this suit. Two of the proposed intervenors, Mr. Britten and Leonardo Johnson, Jr., have moved to proceed *in forma pauperis* and for appointment of counsel. Another individual (apparently a carpenter) named Anita Moore, who is not a party to this suit and has not moved to intervene, also has moved to proceed *in forma pauperis* and for appointment of counsel. Finally, Defendant Champion has moved to strike the reply brief of one of the proposed intervenors, Mr. Roderick Johnson, filed in support of his motion to intervene. For the reasons stated below, Plaintiff's motion to amend is denied, the motion to intervene is denied, the motions to proceed *in forma pauperis* and for appointment of counsel of Mr. Britten and Leonardo Johnson, Jr. are denied as moot, Anita Moore's motions to proceed *in forma pauperis* and for appointment of counsel are denied, and Defendant Champion's motion to strike is denied as moot.

RELEVANT FACTS

A.    The Current Defendants and Claims

Defendants Champion, Freeman, and GES (Viad is the parent company of GES) are general contractors that provide set-up and tear-down services to trade associations and other organizations that sponsor trade shows or expositions at sites in Chicago such as McCormick Place and Navy Pier. (D.E. 101 at 2; D.E. 34, ¶¶ 11-12.) To perform work such as laying and removing carpet and setting up and breaking down exhibit booths, Defendants hire carpenters on a day-to-day basis. (D.E. 101 at 2; D.E. 34, ¶¶ 10-11.) In his reply in support of his motion to

2

amend, Plaintiff asserts that "the hiring process [of the Defendant contractors] is open to abuse because foreman have great latitude in selecting and hiring." (D.E. 104 at 3.) As noted above, Plaintiff has alleged that Defendants failed to hire and/or promote him because of his race and that Defendants have retaliated against him for complaining of the discrimination. (D.E. 34, ¶ 1.)

B.    The Proposed Additional Defendants and Claims

With respect to the proposed defendants, the Carpenters Union is the local branch of the International Brotherhood of Carpenters, the union to which Plaintiff and, presumably, the proposed intervenors, belong. (D.E. 34, ¶ 10.) According to Plaintiff's proposed Second Amended Complaint (also, "the proposed complaint"), the Council of Carpenters is "a district office of the International Brotherhood of Carpenters," (D.E. 94, ¶ 19), and Frank Libby and Earl Oliver are "union business agents." (*Id.* ¶ 68.) The Pier Authority is described in the proposed amended complaint as "a body politic and Municipal Corporation of the State of Illinois. . . . Its corporate purpose is to promote, operate and maintain fairs, expositions, meetings and conventions . . . ." (*Id.* ¶ 15.) Proposed defendant Terrance Mcgann has "represented the carpenters union . . . .[and] was employed under [the law firm of proposed defendant] Whitfield & Gergorio . . . ." (*Id.* ¶¶ 79-80.)

In the proposed complaint, Plaintiff alleges that "While defendant [Pier] Authority knows or should know of the racially discriminatory hiring and firing practices of the defendants who set up and operate on the Authority's property, with the defendant Authority's permission, the defendants Authority has refused to take any action to require defendant employers not to engage in such discrimination." (*Id.* at ¶ 64.) Plaintiff has attempted to state claims against the Pier Authority for "breach of duty[,] Breach of trust, Breach of contract[,] and Failure to Represent,"

3

and has alleged that the Pier Authority has violated "Title VII of the Civil Rights Act and 28 U.S.C. § 1331, § 1343 (a)(2)(3) and 42 U.S.C. § 2000e-5(f)(3) and over 42 U.S.C. § 1981, 1983, 1988, 1985(3), 1986 and 18 USC 241, 242." (*Id.* at 13, ¶ 65.)

With regard to the Carpenters Union, the Council of Carpenters, and Mr. Libby and Mr. Oliver, the union officials, Plaintiff alleges that they "create a network of persons" who favor white carpenters. (*Id.* ¶¶ 68, 74.) Plaintiff further alleges that "Unions have an affirmative duty to ensure compliance with Title VII." (*Id.* ¶ 67.) Plaintiff attempts to state causes of action for "breach of duty, Breach of trust, Breach of contract and Failure to Represent," (*id.* at 14), against Mr. Libby and Mr. Oliver, attempts to state causes of action for breach of duty, breach of trust, and breach of contract against the Carpenters Union and the Council of Carpenters, (*id.* at 16), and alleges that these four proposed union defendants violated the same federal statutes allegedly violated by the Pier Authority and also certain CFR provisions. (*Id.* ¶¶ 71, 77.)

As to attorney Mcgann and the law firm of Whitfield and Mcgann, Plaintiff alleges that Mr. Mcgann, while employed by Whitfield and Mcgann, "represented the carpenters union before Plaintiff Jones and similarly situated filed an EEOC complaint on June 6, 1996 alleging employment discrimination by trade show contractors" and that "[through]out the litigation in 1997 to present Mr. Mcgann had and has advanced knowledge of the adverse actions in the trade show industry but failed to uphold his ethical and fiduciary duties to the union members namely plaintiff Jones and similarly situated black carpenters." (*Id.* ¶¶ 79, 81.) Although not entirely clear, it appears that Plaintiff attempts to state claims against Mr. Mcgann and Whitfield and Mcgann for the aforementioned breach of duty, breach of trust, breach of contract, and failure to represent, and Plaintiff asserts that these proposed defendants violated the same federal statutes

4

and regulations that the other proposed defendants allegedly violated. (*Id.* ¶ 82.)

### C.    Litigation History

In his reply in support of his motion to amend, Plaintiff asserts that the "Defendants (contractors) have maintained a system of hiring . . . [that] has been in practice for decades . . . . As early as 1997 to present the Carpenters Union (etc) and the [Pier Authority] has been aware of the alleged adverse actions by the General contractors in the trade show industry and fail to provide equal protection under the color of the law (Accessory after the fact)." (D.E. 104 at 1-2.) Plaintiff also states that he "for years has attempted to right the wrong that has become a common practice and purposeful ignorance by all Defendants and will continue to d[o] so until a remedy is rendered (redress)." (*Id.* at 2-3.)

In this regard, Plaintiff and proposed intervenor Roderick Johnson have participated in various lawsuits involving certain of the Defendants and proposed defendants since 1997. On January 22, 1997, Plaintiff, Roderick Johnson, and four other African American carpenters filed a lawsuit against GES alleging that the company discriminated and retaliated against them in violation of Title VII and Section 1981. (D.E. 1 in 97-C-7405.) In that suit, the district court (Plunkett, J.) granted summary judgment in favor of GES, and the Seventh Circuit affirmed. *See Thompson v. GES Exposition Services*, No. 01-2055, 2002 U.S. App. LEXIS 2194, at **7-9 (7th Cir. Feb. 6, 2002). On October 22, 1997, Plaintiff, Roderick Johnson, and four other carpenters filed another suit against the Council of Carpenters and the Carpenters Union, alleging that these entities "knew of G.E.S.'s discrimination [and] employment practice[s] and failed to take action . . . ." (D.E. 1 in 97-C-7406 at 2.) In that case, which proceeded before Judge Manning, the attorneys who were appointed to represent Plaintiff and Roderick Johnson moved to withdraw on

5

grounds that it had become evident that Plaintiff and Roderick Johnson could afford to pay for legal representation. (D.E. 102 and 112 in 97-C-7406.) Judge Manning granted the motions to withdraw. (D.E. 111 and 113 in 97-C-7406). Eventually, after the Council of Carpenters and Carpenters Union indicated that they would seek summary judgment on the claims of Plaintiff and Roderick Johnson, Plaintiff and Roderick Johnson voluntarily dismissed their case in 97-C-7406 on December 2, 2003. (D.E. 121 in 97-C-7406.)

Plaintiff filed the instant suit, on an individual basis, against Champion, Freeman, and GES on August 30, 2002. (D.E. 1.) The case was initially assigned to Judge Lefkow. On January 29, 2003, Plaintiff moved to amend his complaint to allege a class action, to add as defendants the International Brotherhood of Carpenters, the Council of Carpenters and the Carpenters Union, and to consolidate his case with another pending discrimination suit brought by Roderick Johnson against GES, Viad, and Freeman, 02-C-7096, that was proceeding before Judge Conlon.[1] (D.E. 25.) In that motion, Plaintiff asserted that he and Roderick Johnson "have sought after assistance from the Union for [m]any years[.] The Union has a ethical and legal responsibility to help any member who request [i]t" and asserted that the International Brotherhood of Carpenters, the Council of Carpenters and the Carpenters Union violated Title VII, among other statutes, and that those entities had engaged in conduct amounting to, among other things, "[f]ailure to represent, breach of contract, breach of duty, breach of trust. . . ." (*Id.*

---

[1]On April 3, 2003, Roderick Johnson voluntarily dismissed suit 02-C-7096 without prejudice, (D.E. 49 in 02-C-7096), after Freeman filed a motion to sanction him for his failure to comply with discovery obligations, (D.E. 43 in 02-C-7096), and Judge Conlon vacated her previous order granting him *in forma pauperis* status and granted his appointed counsel's motion to withdraw when information was brought to Judge Conlon's attention that Roderick Johnson could afford to pay for legal representation. (D.E. 24 & 35 in 02-C-7096.)

6

at 2-3.) Plaintiff also stated in that motion that he "and Mr. Johnson was told in mid December of 2002 by Terrance Mcgann Union Representative (legal coun[sel]) that he and [F]rank Libby (President of Local #10 and assistant to President of District Council) would help rectify our situation" but that Mr. Mcgann and Mr. Libby have provided no help despite Plaintiff's "attempts for them to do [s]o." (*Id.*) On February 11, 2003, Judge Lefkow denied without prejudice Plaintiff's motion to amend his complaint to allege a class action, took the motion to add defendants and to consolidate under advisement, and appointed attorney Thomas Howard Geoghegan to represent Plaintiff. (D.E. 27.)

On March 10, 2003, Judge Lefkow granted Plaintiff's oral motion to amend his complaint. (D.E. 31.) Plaintiff filed his First Amended Complaint on April 21, 2003. While Plaintiff asserted class allegations in his First Amended Complaint, he did not add any parties. (D.E. 34.) On May 1, 2003, Plaintiff withdrew his motion to add defendants and Judge Lefkow denied his motion to consolidate as moot. (D.E. 35.) Later in May 2003, Defendants Champion, Freeman, and GES filed motions to dismiss. (D.E. 38, 39.)

On June 10, 2003, Judge Lefkow ordered that "[a]ny amendments to the pleadings and/or joinder of additional parties may be sought upon appropriate motion by 7/10/03." (D.E. 42.) On June 20, 2003, Roderick Johnson filed a motion to intervene. (D.E. 47.) On June 23, 2003, Plaintiff's appointed attorney, Thomas Howard Geoghegan, moved to withdraw as Plaintiff's counsel, citing "substantial disagreement on litigation strategy." (D.E. 46 at 1.) Judge Lefkow granted Mr. Geoghegan's motion on June 26, 2003. (D.E. 48.)

On July 31, 2003, Judge Lefkow granted in part and denied in part Defendants' motions to dismiss. (D.E. 54.) Judge Lefkow dismissed the class allegations with respect to the Title VII

7

claims. (*Id.*) That same day, Champion moved for summary judgment. (D.E. 55.) On November 19, 2003, Roderick Johnson filed a "Notice of Filing" regarding "amendment to the motion to Intervene" seeking to add as proposed intervenors carpenters Glen R. Britten, Katrice Crawford, James Garrett, Leonardo Johnson, Jr., Leonardo Johnson, Sr., David L. McNeil, and Van E. Wilkerson. (D.E. 67.) Judge Lefkow stated in an October 9, 2003 minute order that she would be taking Roderick Johnson's motion to intervene under advisement until "after the Court's decision is entered on the motion of defendant Champion Exposition Services for summary judgment." (D.E. 63.)

On March 3, 2004, this case was reassigned from Judge Lefkow to this Court. (D.E. 69.) On March 25, 2004, this Court extended the fact discovery cut-off to July 1, 2004 (Judge Lefkow originally ordered that the discovery cut-off would be April 25, 2003, (D.E. 21), and subsequently ordered that "[a]ll discovery will close on 9/10/03." (D.E. 42.))[2] This Court denied defendant Champion's motion for summary judgment against Plaintiff on April 15, 2004. (D.E. 72.) On April 28, 2004, this Court denied without prejudice a motion for leave to amend that Plaintiff had filed on October 28, 2003 without attaching a proposed amended complaint. (D.E. 64.) Also on April 28, 2004, this Court granted Roderick Johnson until May 12, 2004 to file a supplemental brief in support of his motion to intervene and set a briefing schedule for responses and a reply. (D.E. 73.)

---

[2] Since Judge Lefkow set the discovery deadline, the parties have completed some (but perhaps not all) discovery concerning Mr. Jones's case. This Court has indicated that the subject of any remaining discovery will be addressed after the release of this Opinion clarifying the scope of this case going forward. The parties are directed to please confer about what discovery, if any, is appropriate going forward in light of this Opinion and to please be prepared to address this matter at the initial status hearing thereafter.

On May 12, 2004, Roderick Johnson filed his supplemental brief in support of his motion to intervene and Mr. Britten, Leonardo Johnson, Jr., and Ms. Moore moved to proceed *in forma pauperis* and for appointment of counsel. (D.E. 74, 75, 76, 77, 78.) On June 15, 2004, Plaintiff filed a motion to amend without filing a proposed amended complaint. (D.E. 89.) Plaintiff filed a new motion to amend, this time with a proposed amended complaint, on July 12, 2004. (D.E. 94.) After Champion was granted a requested one-week extension to file a response to Roderick Johnson's motion to intervene, (D.E. 85), and Roderick Johnson was given a requested three-week extension, (D.E. 92), briefing on the motion to intervene was completed on July 16, 2004. Briefing on the motion to amend was completed on August 12, 2004. (D.E. 104.)

## DISCUSSION

A.     The Motion to Amend

"Although leave to amend shall be freely given when justice so requires, Fed.R.Civ.P. 15(a), leave is inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991). While "delay alone is an insufficient reason to deny [a] proposed amendment, there is a 'sufficient basis for denial of leave to amend . . . when the delay has caused the opposing party undue prejudice.'" *Chavez v. Illinois State Police*, 251 F.3d 612, 633 (7th Cir. 2001) (quoting *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1391 (7th Cir. 1983)). "Undue prejudice occurs when the amendment 'brings entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the complaint' and when the additional

9

discovery is expensive and time-consuming." *In re Ameritech Corp. v. Computer Systems Solutions, Inc.*, 188 F.R.D. 280, 283 (N.D. Ill. 1999) (quoting *A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Corp.*, 68 F.R.D. 383, 385 (N.D. Ill. 1975)). Precedent states that it is "within a district court's discretion to deny an amendment to the pleadings for delay and prejudice to the opposing party." *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1379 (7th Cir. 1990); *accord, e.g., Hindo v. University Services/The Chicago Medical School*, 65 F.3d 608, 615 (7th Cir. 1995) (collecting cases).

Plaintiff's proposed amendment must be denied because of Plaintiff's undue delay and the prejudice to Defendants that would result if the amendment were allowed. It is clear from Plaintiff's filings that he has known of the grounds for claims against the new proposed defendants for years. As set forth above, Plaintiff claims that the allegedly discriminatory system of hiring used by the Defendants (the contractors) "has been in practice for decades," (D.E. 104 at 1), and that "[a]s early as 1997 to present the Carpenters Union (etc) and the [Pier Authority] has been aware of the alleged adverse actions by the General contractors in the trade show industry and fail to provide equal protection under the color of the law (Accessory after the fact)." (*Id.* at 1-2.) Plaintiff also asserts that Mr. Mcgann, of Whitfield and Mcgann, "represented the carpenters union before Plaintiff Jones and similarly situated filed an EEOC complaint on June 6, 1996 alleging employment discrimination by trade show contractors" and that "[through]out the litigation in 1997 to present Mr. Mcgann had and has advanced knowledge of the adverse actions in the trade show industry but failed to uphold his ethical and fiduciary duties to the union members namely plaintiff Jones and similarly situated black carpenters." (D.E. 34, ¶¶ 79, 81.)

10

In this regard, Plaintiff even specified that he "for years has attempted to right the wrong that has become a common practice and purposeful ignorance by all Defendants. . . ." (D.E. 104 at 2-3.)[3] Indeed, Plaintiff, along with five other carpenters, filed a separate suit against the Council of Carpenters and Carpenters Union on October 22, 1997, alleging that these entities "knew of G.E.S.'s discrimination [and] employment practice[s] and failed to take action . . . ." (D.E. 1 in 97-C-7406 at 2.) Furthermore, as noted above, on January 29, 2003, Plaintiff actually filed—but later withdrew—a motion in this case to add the Council of Carpenters and Carpenters Union as defendants, (D.E. 25 at 2-3; D.E. 35), and in that motion, Plaintiff stated that he "and Mr. Johnson was told in mid December of 2002 by Terrance Mcgann Union Representative (legal coun[sel]) that he and [F]rank Libby (President of Local #10 and assistant to President of District Council) would help rectify our situation" but that Mr. Mcgann and Mr. Libby have provided no help despite Plaintiff's "attempts for them to do [s]o." (*Id.* at 1-2.) In sum, despite having knowledge of the grounds for claims against the proposed new defendants for years, Plaintiff did not include those claims in either his original complaint in this case, which was filed almost two years before he filed the proposed Second Amended Complaint, or his now-operative

---

[3] In the proposed Second Amended Complaint, Plaintiff also makes clear that he has been complaining about hiring practices by general contractors at McCormick Place since 1996 (*e.g.*, D.E. 94, ¶¶ 17, 24) and that the union defendants and the Pier Authority did not adequately respond, in his view, to his complaints. (*Id.* ¶ 17 (explaining that Plaintiff and other colleagues were "given permission to picket on some events but the MPEA [Metropolitan Pier and Exposition Authority] never took any action is Affirming there rights. But for taking NO action with plaintiff Jones and others similarly situated to remedy the issues, they not only allowed but encouraged this adverse action to continue.")); *id.* ¶ 24 (making substantially identical allegations concerning the proposed union defendants). In other filings, Plaintiff also makes clear that he believes the proposed defendants are part of the alleged campaign of "purposeful ignorance" that Plaintiff has been aware of and allegedly aggrieved by for years. *See, e.g.*, D.E. 104 at 4 (discussing the union entities and officers and Pier Authority).

First Amended Complaint, which was filed more than fourteen months before he filed the proposed Second Amended Complaint.

Instead, Plaintiff waited until after the scheduled close of fact discovery and more than a year after the deadline Judge Lefkow set for "amendments to the pleadings and/or joinder of additional parties" to file the proposed amended complaint. (D.E. 42.)[4] Plaintiff offers no reasons to justify this delay. These circumstances lead the Court to find that Plaintiff has unduly delayed filing the proposed amended complaint. *See, e.g., Park v. City of Chicago*, 297 F.3d 606, 613 (7th Cir. 2002) (affirming denial of motion to amend and holding that, where the plaintiff "knew or should have known of the City's possible violation," her "six-month wait constituted undue delay."); *Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992) (affirming denial of motion to amend on grounds that "even if O'Grady's admittedly tardy written interrogatories first brought to Perrian's attention the need to depose the medical personnel, Perrian has not explained why he waited from July 14 to September 21, the end of the lengthened discovery period, to ask to depose the medical personnel, and then until November 1 to add them as defendants."); *Ernst v. Anderson*, No. 02-4884, 2004 WL 1497794, *2 (N.D. Ill. July 1, 2004) ("[D]elaying confirmation of the alleged defamation for several months and waiting for more than two months after confirmation to move to file an amended complaint constitutes undue

---

[4] The pending proposed amended complaint was filed on July 12, 2004 (D.E. 94)—or approximately one year after the deadline of July 10, 2003, that Judge Lefkow set back on June 10, 2003. (D.E. 42.) Previously, on June 15, 2004 (D.E. 89), and October 28, 2003 (D.E. 64)—some eleven and three and one-half months, respectively, after the deadline set by Judge Lefkow—Plaintiff filed motions to file an amended complaint but did not attach any proposed amended complaint to either motion. Both of these motions were dismissed without prejudice because no proposed complaint was attached to them (D.E. 73; D.E. 90)—preventing the parties and Court from assessing whether an amended complaint was appropriate.

delay."); *see also Glatt v. Chicago Park District*, 87 F.3d 190, 194 (7th Cir. 1996) (affirming

denial of motion to amend complaint filed 16 months after the original complaint was filed and

more than a year after the discovery of the document on which the proposed amendment was

based).

The prejudice that Defendants would suffer if the motion to amend were granted is

evident. Much of the additional discovery that would have to be conducted to address the fifteen

additional claims sought to be asserted against the seven proposed new defendants would relate

to the alleged practices of the current Defendants, since it is the alleged longstanding existence of

these practices and the proposed defendants' alleged understanding and knowledge of them that

are placed at issue in the proposed additional claims. (At a minimum, the Plaintiff would surely

need to be redeposed too.) Given the time period at issue—at least the last seven years,

according to Plaintiff—and the substantial number of proposed new defendants that would be

involved, such additional discovery would be time-consuming and expensive. It is well-

established that such additional discovery and delay constitute undue prejudice sufficient to

require denial of a proposed amendment, particularly where, as here, the conclusion of the case is

in sight. *See, e.g., Continental Bank v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) ("If the

amendment were allowed, the bank would have been put to additional discovery, and thus

prejudiced. We conclude that the district court did not abuse its discretion in refusing the

amendment because of undue delay."); *Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992)

("'Eleventh hour additions . . . [are] bound to produce delays that burden not only the parties to

the litigation but also the judicial system and other litigants.'") (quoting *Campbell v. Ingersoll

Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir. 1990)); *Ferguson v. Roberts*, 11 F.3d 696, 706-

07 (7th Cir. 1993) (affirming denial of motion to amend where proposed complaint contained new claims "which would undoubtedly require additional discovery" and there was a "fast-approaching trial date."); *Johnson v. Methodist Medical Center of Illinois*, 10 F.3d 1300, 1304 (7th Cir. 1993) ("[I]t seems likely that Methodist, as it contends, would have to engage in substantial additional discovery and thus be prejudiced if plaintiff's proposed amended complaint were accepted."); *Foodcomm Int'l v. Barry*, No. 02-7268, 2003 WL 23144860, *3 (N.D. Ill. Dec. 22, 2003) (denying motion to amend complaint where plaintiff sought to add six defendants approximately four months before discovery was scheduled to close).

Moreover, denial of leave to amend is "particularly warranted" in this case because Plaintiff has offered no explanation for his delay. *Hindo v. University of Health Sciences/The Chicago Medical School*, 65 F.3d 608, 615 (7th Cir. 1995) ("A denial is particularly warranted in instances in which the plaintiff has failed to provide an explanation as to why the amendment did not take place sooner, and where the delay in granting the motion to amend would cause delay and burden the parties."); *accord, e.g., Miles, III v. S.C. Johnson & Son, Inc.*, No. 00-3278, 2002 WL 1303131, *3 (N.D. Ill. June 12, 2002) (collecting cases); *Lippert Marketing, Ltd. v. Kingwood Ceramics, Inc.*, No. 95-6490, 1997 WL 527282, *3 (N.D. Ill. Aug. 19, 1997).[5] Hence,

---

[5] Defendants also contend that leave to amend the extant complaint should be denied on futility grounds, because, Defendants contend, many or all of the proposed claims fail as a matter of law. At least some of the proposed charges do clearly fail as a matter of law. For example, the proposed Second Amended Complaint purports to advance charges under 18 U.S.C. §§ 241 & 242, but it is well settled that those are criminal statutes which cannot be prosecuted by private citizens, as opposed to federal prosecutors acting on behalf of the United States of America. *See, e.g., United States v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998) ("Courts repeatedly have held that there is no private right of action under § 241, even though the statute allows federal authorities to pursue criminal charges."); *Cok v. Costentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242 . . . These

for all of the above reasons, Plaintiff's motion to amend is denied.

### B.    The Motion to Intervene

Because Roderick Johnson's motion to intervene does not clearly specify whether he is seeking to intervene only under Federal Rule of Civil Procedure 24(a) (intervention as of right) or whether he is also moving under Rule 24(b) (permissive intervention), the Court will err in his favor and assume that he is attempting to proceed under both rules. The Court concludes that intervention is not appropriate in the instant circumstances under either rule.

### 1.    Rule 24(a) (Intervention as of Right)

Where, as here, there is no statute giving an absolute right to intervene, "[t]here are four requirements for intervention of right under [F]ed.R.Civ.P. 24(a) . . . (1) timeliness, (2) an interest relating to the subject matter of the main action, (3) at least potential impairment of that interest if the action is resolved without the intervenor, and (4) lack of adequate representation by existing parties." *Reid L. v. Illinois State Board of Education*, 289 F.3d 1009, 1017 (7th Cir. 2002). As explained by the Seventh Circuit, "[t]he burden is on the party seeking to intervene of right to show that all four criteria are met. If not, then the district court must deny intervention of right." *Id.* (internal citations omitted). This Court denies intervention of right because the proposed intervenors have not met the "impairment" requirement.

---

statutes do not give rise to a civil action for damages."); *Lovelace v. Whitney*, 684 F. Supp. 1438, 1441 (N.D. Ill. 1988) (Aspen, J.) (holding that "18 U.S.C. § 242 . . . is a criminal statute which provides no private cause of action") (collecting cases); *Pawelek v. Paramount Studios Corp.*, 571 F. Supp. 1082, 1083 (N.D. Ill. 1983) (Shadur, J.) (holding that "it is well settled no private right of action inheres in those criminal provisions [18 U.S.C. §§ 241-242]"). Given the other reasons that warrant denial of the motion to amend the complaint, the Court need not and does not pass on whether all of the proposed charges are barred as a matter of law.

"Impairment exists when the decision of a legal question . . . would, as a practical matter, foreclose the rights of the proposed intervenor in a subsequent proceeding." *Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir. 1994) (internal quotation omitted); *accord, e.g., American Nat'l Bank and Trust Co. of Chicago v. The City of Chicago*, 865 F.2d 144, 147-48 (7th Cir. 1989); *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982). Thus, where the disposition of a suit will not bar a proposed intervenor from asserting his or her rights in a separate action, the "impairment" prong of 24(a) typically is not met. *See Shea*, 19 F.3d at 347 ("[W]hether or not Shea recovers from FCA, Butzen remains free to initiate his own suit against Shea to recover his share of the alleged partnership earnings. The district court correctly held, therefore, that–even if he could prove the allegations contained in the materials submitted to that court–there is no potential impairment of Butzen's interest as a result of the disposition of the Shea-FCA action.").

Because no class has been certified in the present case, disposition of the suit will not bar (or even meaningfully preclude) the proposed intervenors from pursuing their own rights in their own separate action(s). Indeed, the proposed intervenors do not even contend that they would be unable to bring a separate suit but instead emphasize that they have viable claims, particularly since no statute of limitations has run and the Defendants, in any event, "all have continuing violations [which] . . . . are still occurring to this day."[6] (D.E. 95 at 1-2.) Moreover, even if the

---

[6] While the motions to intervene may be construed to suggest that not all of the proposed intervenors have filed charges with the EEOC, generally a prerequisite to filing suit under Title VII, the proposed intervenors have also, as stated above, indicated that they believe they still could file charges given that Defendants' alleged actions are continuing violations that are still occurring.

intervenors were barred from bringing a separate action by a statute of limitations (or, as to their

Title VII claims, for failure to timely file a charge), this would not constitute a sufficient

impairment of interests within the meaning of Rule 24(a) because the harm would not be due to

the disposition of this action. *See United States v. City of New York*, 198 F.3d 360, 366 (2d Cir.

1999) ("[A]ny failure on their part to act within the applicable statutes of limitations does not

sufficiently impair their interests to warrant intervention under Rule 24(a)(2); rather, the harm to

their interests must be attributable to the court's disposition of the suit in which intervention is

sought.") (citation omitted); *accord, e.g., Hawaii-Pacific Venture Capital Corp. v. H.B.*

*Rothbard*, 564 F.2d 1343, 1345 (9th Cir. 1977) (holding that impairment requirement was not

met and stating that "[t]o begin with, the appellants' contention that their state claims seeking

payment for unpaid AH stock subscriptions are now barred by the statute of limitations alleges

harm not related to and not attributable to the disposition of the class action suit."). At any rate,

inasmuch as resolution of this case, in which no class has been certified, will not preclude the

proposed intervenors from bringing their own suit, the proposed intervenors have not satisfied

the "impairment" requirement of Rule 24(a). *See In re Safeguard Scientifics*, 220 F.R.D. 43, 48-

49 (E.D. Pa. 2004) (holding that impairment requirement was not met and denying motion to

intervene as of right where no class was certified and the proposed intervenors therefore

"remain[ed] free to assert their claims by filing individual civil actions against [the defendant].");

*accord, e.g., Warden, III v. Crown American Realty Trust*, No. Civ.A. 96-25J, 1998 WL 725946,

*4 (W.D. Pa. Oct. 15, 1998). Therefore, because the "impairment" requirement has not been

met, the Court denies the motion to intervene insofar as it seeks intervention pursuant to Rule

24(a).

17

2.    Rule 24(b) (Permissive Intervention)

"Permissive intervention under Rule 24(b) is wholly discretionary . . . ." *Sokaogon*

*Chippewa Community v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000); *accord, e.g., Shea v.*

*Angulo*, 19 F.3d 343, 346 n.2 (7th Cir. 1994). Rule 24(b) provides, in pertinent part, that "[u]pon

timely application anyone may be permitted to intervene in an action . . . when an applicant's

claim or defense and the main action have a question of law or fact in common. . . In exercising

its discretion the court shall consider whether the intervention will unduly delay or prejudice the

adjudication of the rights of the original parties." Fed.R.Civ.P. 24(b). The proposed intervenors

bear the burden of demonstrating a common question of law or fact with the main action. *See,*

*e.g., Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995) ("The

proposed intervenor must demonstrate that there is (1) a common question of law or fact . . . .").

As an initial matter, the Court notes that it is questionable whether the proposed

intervenors have met their burden of showing a common question of law or fact. Plaintiff has not

alleged a discriminatory policy of general application, such as a biased testing procedure. Rather,

Plaintiff claims that the various Defendants' foremen, who are the employees that make

personnel decisions with respect to carpenters, are "predominantly" but not exclusively,

"whites," (D.E. 34, ¶ 1), and that the foremen "have great latitude in selecting and hiring," (D.E.

104 at 3), and "give preference to white carpenters in hiring, training and promotion." (D.E. 34,

¶ 12.) Courts have taught that such "a decentralized hiring procedure, which allows

decisionmakers to consider subjective factors," may support "individual claims of discrimination

but cuts against the assertion that an employer engages in a pattern or practice of discriminatory

hiring as a standard operating procedure." *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 424

18

(N.D. Ill. 2003) (citing *Stastny v. Southern Bell Telephone and Telegraph Co.*, 628 F.2d 267, 279 (4th Cir. 1980)). In other words, if a defendant's decision making procedure is decentralized, the circumstances of each person's treatment (or mistreatment) are likely to be individualized. *See id.* at 425-27. Furthermore, courts have held that proposed intervenors in discrimination cases have failed to show a common question of law or fact where "they allege disparate treatment claims that are unique to each individual complainant." *Seils v. Rochester City School District*, 199 F.R.D. 506, 512 (W.D. N.Y. 2001) ("The fact that a plaintiff may attempt to introduce evidence relating to the treatment of a proposed intervenor at trial in the instant matter does not create 'common issues of law or fact' warranting intervention.") (quoting *Sidari v. Orleans County*, 174 F.R.D. 275, 286 (W.D. N.Y. 1996)).

Although the Court is not denying the motion for intervention on grounds that a common question is lacking, the individualized nature of the proposed intervenors' discrimination claims is nonetheless significant. Because these claims are individualized, the considerable prejudice that would in any event result from adding plaintiffs at this late stage in the litigation is magnified. The new discovery that would be necessary to litigate the proposed intervenors' claims (not to mention their impact on the prompt resolution of any trial) would be substantial, and addition of these individuals "would make this suit unnecessarily complex, unwieldy and prolonged"—which precedent teaches is a sufficient reason to deny permissive intervention. *Shea*, 19 F.3d at 349; *accord, e.g., Coburn v. Daimlerchrysler*, 218 F.R.D. 607, 611 (N.D. Ill. 2003) (Castillo, J.); *Seils*, 199 F.R.D. at 513; *Sidari*, 174 F.R.D. at 286; *Siegel v. Lyons*, No. C-95-3588, 1996 WL 634206, *8 (N.D. Cal. Sept. 16, 1996) (denying request to intervene by proposed additional plaintiffs in putative class action on the basis that "granting this motion at

19

this time would unnecessarily complicate and delay this litigation."). Adding these several new parties would geometrically expand the case and prolong the time and expense to Defendants (who were sued over two years ago) before an answer in this case is rendered. *See* Fed. R. Civ. P. 24(b) ("In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.")[7]

In addition, denial of the motion to intervene is also appropriate because, as noted above, the proposed intervenors are free to assert their rights in a separate suit. *See, e.g., Head v. Jellico Housing Authority*, 870 F.2d 1117, 1124 (6th Cir. 1989) ("[A] charge of abuse of discretion in the denial of a motion for permissive intervention appears to be almost untenable on its face when an appellant has other adequate means of asserting her rights.") (citing, *inter alia, Korioth v. City of Farmers Branch*, 523 F.2d 1271, 1279 n.25 (5th Cir. 1975)); *Coburn*, 218 F.R.D. at 610; *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 89 F.R.D. 552, 555 (N.D. Ill. 1981)

---

[7] Plaintiff's suit was originally filed in August 2002. (D.E. 1.) Roderick Johnson first sought to intervene in June 2003 (D.E. 47) and Mr. Johnson filed a "Notice of Filing" regarding "amendment to the motion to Intervene" seeking to add the other seven putative intervenors in November 2003. The Court appreciates that Mr. Johnson was told in October 2003 that his motion to intervene would be considered after a ruling upon the then-pending summary judgment motion of Defendant Champion against Plaintiff. (D.E. 63). Upon receipt of this case in March 2004, this Court endeavored to promptly rule upon that motion for summary judgment against Plaintiff (it was denied in April 2004 (D.E. 72)) and, due to extensions requested by the parties (including the putative *pro se* intervenor, Mr. Johnson, and the Plaintiff) briefing on the motions to intervene and amend were not completed until July and August 2004, respectively. The Court does not count the time that has passed since Mr. Johnson and the other putative intervenors indicated a willingness to join against them, given the prior decision that the motions to intervene would not be visited until after the summary judgment ruling was rendered; the Court instead finds that, on the circumstances of this case, the addition of the claims of the eight putative intervenors (who waited at least ten months before seeking to intervene) when offered would have materially expanded the scope of the case and trial and unduly delayed resolution of the pending claims at issue between the parties. *Accord, e.g., Coburn v. Daimlerchrysler*, 218 F.R.D. 607, 610-11 (N.D. Ill. 2003). That situation is equally true today.

(Shadur, J.) ("Intervenors' state court action will permit a full adjudication of their rights. There is no need further to complicate or delay this action by the injection of new parties and an entirely new set of claims."). Furthermore, while the primary purpose for intervention expressed by the proposed intervenors is to use the single filing rule to assert a Title VII class action based on Plaintiff's EEOC charge, (D.E. 47 at 2; D.E. 67 at 2), as explained above, the proposed intervenors have also indicated that they still could file their own charges given their assertions that Defendants' alleged actions are continuing violations that are still occurring. (D.E. 95 at 1-2.) Moreover, in any event, Plaintiff's EEOC charge could not serve as the basis of a Title VII class suit because Judge Lefkow already dismissed the Title VII class allegations from Plaintiff's complaint. (D.E. 54.) Thus, because intervention would result in substantial prejudice to Defendants while at the same time denial of intervention will not materially harm the proposed intervenors, the motion to intervene is denied.

C.     The Remaining Motions

Because the Court has denied the motion to intervene, the motions of proposed intervenors Mr. Britten and Leonardo Johnson, Jr. to proceed *in forma pauperis* and for appointment of counsel and Defendant Champion's motion to strike are all moot and are denied as such. The motions of Ms. Moore to proceed *in forma pauperis* and for appointment of counsel are denied because the governing statute authorizes the Court to grant *in forma pauperis* status and appoint counsel only to persons who commence, prosecute, or defend a suit, action or proceeding, *see* 28 U.S.C. § 1915(a) & (d), and Ms. Moore has not alleged or otherwise indicated that she has or is seeking to commence, prosecute, or defend any suit, action, or proceeding before this Court.

21

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend is denied, the motion to intervene is denied, the motions to proceed *in forma pauperis* and for appointment of counsel of Mr. Britten and Leonardo Johnson, Jr. are denied as moot, Anita Moore's motions to proceed *in forma pauperis* and for appointment of counsel are denied, and Defendant Champion's motion to strike is denied as moot. As previously stated (*see* footnote 2, *infra*), the parties are directed to please confer regarding what discovery, if any, remains to be completed in this case, and what further pre-trial proceedings and/or motion practice, if any, remain to be completed.

Mark Filip
United States District Judge
Northern District of Illinois

Enter: 9-3-04

22